IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EARLSON TSO,
        Plaintiff,

    v.

UNITED STATES, *et al.*,
        Defendants.

No: 1:22-cv-00511–MSN-JFA

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Defendants' Motion to Dismiss (Dkt. No. 15). Upon consideration of the motion, and for the reasons set forth below, this Court will grant in part and deny in part Defendants' Motion to Dismiss.

## I.     BACKGROUND

On May 9, 2022, Earlson Tso filed a complaint against the following defendants: the Federal Bureau of Prisons ("BOP"); Ron Wester, an electrical supervisor at FCC Petersburg ("Petersburg") during the relevant period; Michael Carvajal, the Director of the BOP during the relevant period; Mark Bolster—the only individual Defendant who Tso expressly sued in both his individual and official capacities—acting Warden of Petersburg during the relevant period; and Does 1–40 who worked at FCC Petersburg, FCI Beckley, and USP Marion. (Dkt. No. 1) ("Compl.") ¶¶ 9–14.

On January 18, 2019, while incarcerated at Petersburg, Tso fell from a ladder while performing electrical work and was electrocuted. *Id.* ¶¶ 18, 32. Tso alleges that, prior to performing the electrical work, Tso asked Wester to provide him with a lift device to perform the electrical work; Wester refused and instead "directed Tso to perform dangerous electrical work on a highly elevated

1

light fixture [using] a 10-foot ladder" "without shutting [off] electrical power" to the fixture. *Id.* ¶¶ 22, 26–27, 29. Tso also alleges that Bolster "had actual or constructive knowledge that Wester was directing inmates to work on live electrical lines" but that he did not "correct Wester's unlawful actions," and that the other Defendants "knew, or should have known, that Wester was directing inmates to work on live electrical lines" on ladders. *Id.* ¶¶ 28, 30. Tso alleges that his injuries resulting from the fall and electrocution include a permanently disfigured left hand, "injuries to . . . the entire left side of his body," pelvic pain, difficulty with urination, chronic erectile dysfunction, "ongoing, constant, and severe emotional distress," depression, anxiety for which Tso receives medication, and a "significant loss of mental acuity." *Id.* ¶¶ 34–44.

Since the incident, Tso alleges that he has been "denied proper ongoing medical care for his injuries, disabilities, or his severe emotional distress." *Id.* ¶ 45. Tso alleges that beyond an "initial round of surgical procedures" he "has not received any significant treatment" for his injuries. *Id.* ¶ 46. While at Petersburg, Tso was scheduled to undergo surgery "to repair tendon issues in his left hand" but the surgery was cancelled "without cause or explanation" and has not been rescheduled. *Id.* ¶ 47. Nor, Tso alleges, has he received the physical therapy prescribed to him. *Id.* ¶ 48.

Tso's Complaint alleges four causes of action. Count I raises claims "under Federal Tort Claims Act Pursuant to *Bivens*" against Wester and Bolster. *Id.* ¶¶ 51–56. Under Count II, Tso, who identifies as Native American, brings a claim under Title VII of the Civil Rights Act against the BOP, Wester, and Bolster on the grounds that "white inmates who were similarly situated were not required to work on live electrical systems" and received better medical treatment than Tso. *Id.* ¶¶ 57–63. Count III alleges common law negligence against Wester and Bolster. *Id.* ¶¶ 64–68. Count IV alleges "common law emotional distress" against Wester. *Id.* ¶¶ 69–73.

On September 23, 2022, Defendants filed a Motion to Dismiss for Failure to State a Claim.

(Dkt. No. 15). On that same date, the U.S. Attorney certified that Defendant Mark Bolster was acting within the scope of his employment at the time of the events giving rise to this action. (Dkt. No. 14). On October 24, 2022, Tso filed an Opposition to the Motion to Dismiss. (Dkt. No. 21) ("Opp."). Defendants filed their Reply in support of the Motion on November 7, 2022. (Dkt. No. 23). On that date, the U.S. Attorney certified that Defendant Ron Wester was acting within the scope of his employment at the time of the events giving rise to this action. (Dkt. No. 25). The Court is satisfied that oral argument would not aid in the decisional process. Accordingly, this matter is ripe for resolution.

## II.    LEGAL STANDARDS

This Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). When considering a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's jurisdiction over the subject matter of the suit. It is plaintiff's burden to prove jurisdiction, and the court "regard[s] the pleadings' allegations as mere evidence on the issue[] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## III.   ANALYSIS

### A.   FTCA

Tso concedes that the Federal Tort Claims Act ("FTCA") claim should be dismissed, appearing to agree with Defendants' argument that Tso's FTCA claims are barred by the Inmate Accident Compensation Act ("IACA").[1] Opp. at 8 (citing *Webb v. Lappin*, No. 1:07-cv-1203, 2008 WL 4360995 (E.D. Va. Sept. 22, 2008)). Tso argues in his Opposition, however, that his common law tort claims against Wester should survive because, at the time of his filing, the U.S. Attorney had not certified that Wester was acting within the scope of his federal government employment at the time of the underlying events. *Id.* at 3. Since Tso's filing, the U.S. Attorney has so certified, and, by operation of law, the United States was substituted as defendant in place of Wester. *See* (Dkt. No. 25); 28 U.S.C. 2679(d)(1). The common law tort claims against Wester therefore continue as an FTCA claim against the United States. But Tso has already conceded that any FTCA claim should be dismissed. The Court agrees. The law is clear that federal prisoners cannot recover under the FTCA for work-related torts because the IACA provides the exclusive remedy against the government for common law torts resulting from work-related incidents. *See United States v. Demko*, 385 U.S. 149, 153 (1966) ("Inmates who are subject to the provisions of these Inmate Accident Compensation regulations are barred from recovery under the Federal Torts Claim Act."); *Koprowski v. Baker*, 822 F.3d 248, 254 (6th Cir. 2016) ("Because the IACA and the FTCA protect against the same sort of harm, the IACA displaces the FTCA."). Accordingly, this Court lacks subject matter jurisdiction to consider Tso's claims under the FTCA, and the Court dismisses Counts III and IV without prejudice.

---

[1]      This Court construes Counts III and IV of the Complaint as raising FTCA claims for negligence and intentional infliction of emotional distress.

## B.    *BIVENS*

Although neither the Complaint nor Tso's Opposition are models of clarity, it appears that, under Count I, Tso is pursuing a *Bivens* claim as to Defendants Wester and Bolster.[2] Tso alleges that Wester and Bolster "acted in deliberate indifference to the health and well-being of Tso by requiring him to work on electrical systems . . . which deprived Tso of his right to be free from cruel and unusual punishment" and seeks damages through *Bivens*. Compl. ¶ 54; *see also id.* ¶¶ 51–56. Defendants argue that the *Bivens* claim should be dismissed because (1) such claims cannot be brought against defendants in their official capacities; (2) Tso's claims arise in a new context; and, alternatively, (3) Tso fails to state a claim for relief under *Bivens*.

The Court agrees with Defendants as to the first of their arguments, and dismisses the *Bivens* claim against Defendant Bolster in his official capacity because plaintiffs cannot bring a *Bivens* claim against federal officials acting in their official capacities. *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002).

As to the *Bivens* claim brought against the individual Defendants acting in their official capacities, the Court finds that Tso's claim does not arise in a new context and that Tso has sufficiently stated a claim for relief as to Defendant Wester but not as to Defendant Bolster.[3] In

---

[2]    Count I asserts "Claims Under Federal Tort Claims Act Pursuant to Bivens." Compl. at 7. But the FTCA and *Bivens* are separate and distinct causes of action. Under Count I, Tso alleges that Defendants "acted in deliberate indifference" and "deprived [him] of is right to be free from cruel and unusual punishment." *Id.* ¶ 54. Invoking the constitutional guarantees of the Eighth Amendment under this Count, the Court construes this cause of action as bringing a *Bivens* claim, and Counts III and IV (raising common law tort causes of action) as bringing FTCA claims as discussed above in Section III.A.

[3]    Tso does not reference the BOP under the *Bivens* claim (Count I), but the Court notes that even if he did intend to seek relief under *Bivens* against the BOP—an agency of the federal government—that claim would be foreclosed. *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (concluding that *Bivens* claims cannot be brought against agencies of the federal government).

Moreover, the Court notes that Tso has expressly brought claims against Bolster in his individual and official capacities, but the Complaint is silent about whether he is suing the other two named individual Defendants, including Wester, in their individual or official capacities. In such cases, courts in this Circuit follow the "course of proceedings" test to determine the capacity in which an official is being sued. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Under that test, "the court must examine the nature of the plaintiff's claims, the relief sought and the course of the proceedings

*Bivens*, the Supreme Court recognized an implied right of action where plaintiff sought damages after federal officers conducted a warrantless search of his home, arrested him for alleged narcotics violations, and later subjected him to a visual strip search. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 389 (1971). The Supreme Court has recognized two other limited circumstances in which there were such implied causes of action: (1) gender discrimination in violation of the Fifth Amendment Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979), and (2) failure to provide adequate medical treatment in prison in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980).

In recent years, the Supreme Court has limited the availability of a *Bivens* remedy to cases that do not involve extending liability to "any new context or new category of defendants." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017). The court follows a two-step process to determine whether a claim is properly brought as a *Bivens* action. First, it must determine whether the case before it presents a "new context" from the three cases where the Supreme Court recognized a *Bivens* action. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). A case presents a new context "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court." *Ziglar*, 137 S. Ct. at 1859–60. If a claim presents a new context, the court then moves to step two and asks whether there are any

---

to determine whether a state official is being sued in a personal capacity." *Id.* Relevant factors include: (1) whether the plaintiff fails to allege that the defendants' actions were "in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint[;]" (2) whether the plaintiff seeks compensatory or punitive damages (which are unavailable in official capacity suits); and (3) "the nature of any defenses raised in response to the complaint." *Id.* Here, both because Tso seeks compensatory damages in a *Bivens* claim against Wester and because Tso is entitled to plausible inferences at this stage, the Court determines that Wester has been sued in his individual capacity. Defendants cite to *Francis v. Woody*, No. 3:09-cv-235, 2009 WL 1442015, at * 5 (E.D. Va. May 22, 2009), to support their argument that the logic of *Briggs* does not hold where the complaint was written by counsel. But the *Francis* court also concluded that "[t]he logic of *Biggs*, however, does not apply to this case because the *Biggs* calculus applies only when a plaintiff does not allege capacity specifically. Unlike the prisoner in *Biggs*, whose complaint was silent on the issue of the defendants' capacity, Francis explicitly alleged capacity by pleading that [the officer] was being sued 'in his capacity as Sheriff for the City of Richmond.'" 2009 WL 1442015, at * 5 (cleaned up). Because Tso's complaint is silent on the issue of the capacity in which Wester is being sued, this case is more like *Biggs* than *Francis*.
.

"special factors" that counsel against granting an extension of *Bivens*. *Hernandez*, 140 S. Ct. at 743. If there are such special factors, the Court may not extend *Bivens* to include the claim at hand. *Id.*

Under the first step of the test, the Court must assess whether Tso's claims present a new context. The Court finds that Tso's claim does not arise in a new context, and a *Bivens* remedy is therefore available to Tso. In *Carlson*, the Supreme Court held that a prisoner can maintain a *Bivens* claim against federal prison officials acting with deliberate indifference in violation of the Eighth Amendment. 446 U.S. at 18-19. One threshold question this Court must answer is whether the IACA precludes a *Bivens* remedy; the Court finds that such a claim is not precluded by the IACA. Although the IACA precludes tort actions against the United States, as discussed above, several circuit courts of appeals have held that the IACA does not preclude *Bivens* claims brought against individual federal officials and alleging deliberate indifference under the Eighth Amendment. *Vaccaro v. Dobre*, 81 F.3d 854, 857 (9th Cir. 1996); *Koprowski*, 822 F.3d at 252; *Smith v. United States*, 561 F.3d 1090, 1103 (10th Cir. 2009). The Fourth Circuit has not addressed the issue, but several within-Circuit district courts have concluded that the IACA does not preclude such a claim. *See, e.g., Webb v. Lappin*, 2008 WL 4360995, at *5 (collecting cases) (concluding that the Fourth Circuit "will be inclined to allow *Bivens* suits to proceed in situations where inmates suffer work-related injuries"); *Dabney v. Bledsoe*, No. 1:03-cv-193, 2006 WL 1376903, at *3–5 (N.D.W.Va. May 17, 2006) (plaintiff alleging prisoner workplace injury could maintain *Bivens* action although claim ultimately dismissed for failure to state a claim).[4]

In *Koprowski v. Baker*, a federal prisoner fell off a ladder that he was using to clean a hood in a food-service area of the prison and landed on his back. 822 F.3d at 250. The prisoner alleged that

---

[4]       Defendants cite *Jones v. United States*, No. 4:18-cv-1734, 2019 WL 3360644, at *8 (D.S.C. June 24, 2019), report and recommendation adopted, 2019 WL 3345997 (July 25, 2019), to support their argument that Tso's claim arises in a new context. Def. Mem. at 18. In *Jones*, however, the court did not provide any analysis as to why it considered the prison workplace injury claim to be different from *Carlson*.

prison officials either denied or delayed his access to medical care, leading to continued pain and permanent disability. *Id.* In finding that *Bivens* relief was not precluded on those facts, the Sixth Circuit noted that the case "d[id] not present an opportunity to expand *Bivens*." *Id.* at 257. "For more than 30 years, the Supreme Court has repeatedly affirmed the holding of *Carlson*: prisoners may bring money-damages actions under the Eighth Amendment against federal prison officials." *Id.* at 256–57. Here, Tso, like Koprowski, was working on a ladder for a work assignment in federal prison. Tso alleges that he suffered severe injuries after he fell from a ten-foot ladder and was electrocuted due to prison officials' failure to shut off electrical power to the fixture on which he was working. Compl. ¶ 32. As a result of the incident, Tso alleges that he is permanently disfigured and that proper medical care was either denied or delayed. *See id.* ¶¶ 34–48. Because Tso's claim does not arise in a new context, a *Bivens* remedy continues to be available, and the Court need not turn to the second step. *Hicks v. Ferreya*, 64 F.4th 156, 166 (4th Cir. 2023) (citing *Tun-Cos v. Perrotte*, 922 F.3d 514, 522–23 (4th Cir. 2019)).

Having found a *Bivens* remedy available, the Court considers whether Tso has plausibly stated a claim for relief. First, the Court finds that Tso makes no allegations from which the Court can infer a causal connection between the constitutional violation and the conduct of Defendant Bolster. The Court therefore finds that Tso has not stated a *Bivens* claim with respect to Defendant Bolster. *See Iqbal*, 556 U.S. at 675 (plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

As to Defendant Wester, the Court finds that, at this stage, Tso has plausibly stated an Eighth Amendment violation. A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the deprivation of a basic human need was sufficiently serious, and (2) subjectively, whether the prison official was deliberately indifferent to

8

the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[T]he crucial issue in determining whether a *Bivens* claim is stated is whether an inmate, who has suffered injury, has alleged that the government official 'wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm.'" *McCain v. Drew*, No. CA 0:12-2168-JFA-PJG, 2012 WL 7808880, at *3 (D.S.C. Oct. 24, 2012), report and recommendation adopted, 2013 WL 1281894 (D.S.C. Mar. 26, 2013). Given that Tso alleges that the repairs on highly elevated electrical equipment was part of his prison work assignment and that Tso spoke to Wester to ask for equipment to do so before he began his electrical work, the Court finds that Tso alleges sufficient facts to plausibly suggest Wester—an electrical supervisor—knew of the excessive danger of inmates working on live electrical wires at an elevated height, which carries with it the risk of electrocution and the serious medical complications that may arise following electrocution.[5] The Court therefore denies the motion to dismiss the *Bivens* claim against Defendant Wester.

> ### C.     TITLE VII

Tso brings a cause of action under Title VII of the Civil Rights Act on grounds that similarly situated white inmates were provided with safer working conditions and better medical treatment than Tso, a Native American. *See* Compl. ¶¶ 57–63.

Defendants argue that because Tso's electrical work arose from his status as a BOP inmate and no employer-employee relationship exists between the BOP and Tso, Tso cannot maintain a Title VII claim against Defendants. Defendants do not cite, and the Court has been unable to find, a Fourth Circuit decision addressing whether Title VII applies to a federal prisoner performing work

---

[5]      Defendants cite to the Fourth Circuit decision in *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985) in support. Notwithstanding that *Wright* was on a motion for summary judgment and thus likely decided on a fuller evidentiary record, there is no allegation that the inmate in *Wright* was working on live electrical wires as part of his prison work assignment; as noted above, working with electrical wires carries with it a different (and arguably, more preventable, as electricity can likely be cut off to certain areas on which work is being completed) level of risk.

assignments. Many courts to consider the issue have held that Title VII does not apply in the context of inmates who are assigned to jobs while incarcerated. *See, e.g.*, *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *Wilkerson v. Samuels*, 524 F. App'x 776, 779 (3d Cir. 2013); *Iheme v. Smith*, 529 F. App'x 808, 809 (8th Cir. 2013); *Pope v. United States*, No. 16-1059-SLD, 2017 WL 6523141, at *2 (C.D. Ill. Aug. 28, 2017). Some courts, however, have suggested that statutory schemes designed to protect employees may apply to inmates in narrow circumstances. *E.g. Moyo v. Gomez*, 32 F.3d 1382, 1385 (9th Cir. 1994), *amended*, 40 F.3d 982 (9th Cir. 1994) ("[I]nmates performing work assignments that include compensation or training, or that resemble work release rather than forced labor, are employees entitled to Title VII protection."); *Watson v. Graves*, 909 F.2d 1549, 1554–56 (5th Cir. 1990) (holding that inmates who performed work during unauthorized work release program rather than as part of their sentence were employees for the purposes of the Fair Labor Standards Act); *King v. Schrader*, No. CV DKC 16-3804, 2017 WL 3730335 at *4 (D. Md. Aug. 30, 2017) (discussing that prisoners "may be entitled to employee protections when work is optional and done for economic reasons" but that "an employer-employee relationship" is not established when prisoner performs "work [as] part of a punishment or . . . for rehabilitative purposes").

These limited circumstances do not apply here. Tso alleges that he performed electrical work in his role as an inmate at Petersburg. His work was therefore performed as a BOP inmate—it was neither optional nor for mutual economic gain—and he therefore did not have an employer-employee relationship with the BOP for purposes of Title VII. *Cf. Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993) (concluding that inmates are not employees under the Fair Labor Standards Act and discussing that "in a true employer-employee relationship" there exists "'a bargained-for exchange of labor' for mutual economic gain"). Accordingly, Tso fails to state a Title

10

VII claim, and the Court dismisses Count II with prejudice.

## IV.     CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendant's Motion

to Dismiss (Dkt. No. 15). Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. No. 15) is **GRANTED IN PART**

and **DENIED IN PART**; it is further

**ORDERED** that the Motion to Dismiss the *Bivens* claim as to Defendant Wester is

**DENIED**; and it is further

**ORDERED** that the Motion to Dismiss is **GRANTED** in all other respects.

It is **SO ORDERED**.

                                                              _____/s/_____

                                                              Hon. Michael S. Nachmanoff
                                                              United States District Judge

Alexandria, Virginia
July 28, 2023