IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EARLSON TSO,
        Plaintiff,

   v.

UNITED STATES, *et al.*,
        Defendants.

No: 1:22-cv-00511–MSN-JFA

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court on Defendants' Motion for Reconsideration (Dkt. No. 30). Having considered the motion, opposition and reply briefs, and for the reasons stated below, the Court **GRANTS** Defendant's Motion for Reconsideration.

**I.    BACKGROUND**

On January 18, 2019, Earlson Tso was electrocuted after falling from a ladder while performing electrical work at FCC Petersburg ("Petersburg"). (Dkt. No. 1) ("Compl.") ¶¶ 18, 32. Tso alleges that he requested a man lift from Ron Wester, an electrical supervisor at Petersburg, before performing the electrical work, but Wester refused his request. *Id.* ¶ 22. Instead, Wester "directed [him] to perform dangerous electrical work on a light fixture [using] a 10-foot ladder" "without shutting [the] electrical power off." *Id.* ¶¶ 26-27, 29. Tso further alleges that the injuries he sustained from the fall and electrocution include a permanently disfigured left hand, pelvic pain, difficult and frequent urination, chronic erectile dysfunction, ongoing severe emotional distress, depression, anxiety for which he receives medication, and significant loss of mental acuity. *Id.* ¶¶ 34-44.

Following the incident, Tso claims that he has been "denied proper ongoing medical care for

1

his injuries, disabilities, or his severe emotional distress." *Id*. ¶ 45. Tso also alleges that, apart from an "initial round of surgical procedures," he "has not received any significant treatment" for his injuries. *Id*. ¶ 46. While at Petersburg, Tso was scheduled to undergo surgery "to repair tendon issues in his left hand," but the surgery was inexplicably canceled and has not been rescheduled. *Id*. ¶ 47. Lastly, Tso alleges that that he has not received the physical therapy prescribed to him. *Id*. ¶ 48.

## II.   PROCEDURAL HISTORY

On May 9, 2022, Tso filed a complaint against the following defendants: the Federal Bureau of Prisons ("BOP"); Ron Wester, an electrical supervisor at Petersburg; Michael Carvajal, the Director of the BOP during the relevant period; Mark Bolster, the Acting Warden at Petersburg; and [John] Does 1–40 who worked at Petersburg, FCI Beckley, and USP Marion. Compl. ¶¶ 9-14.

The Complaint presents four causes of action. Count I raises claims "under Federal Tort Claims Act Pursuant to *Bivens*" against Wester, Bolster, "and/or at least one of the Doe Defendants." *Id*. ¶¶ 51-56. Under Court II, Tso, who identifies as Native American, brings a claim under Title VII of the Civil Rights Act against the BOP, Wester, and Bolster on the grounds that "white inmates who were similarly situated were not required to work on live electrical systems" and received better medical treatment than he did. *Id*. ¶¶ 57-63. Count III alleges common law negligence against Wester and Bolster. *Id*. ¶¶ 64-68. Count IV alleges a "common law emotional distress" claim against Wester. *Id*. ¶¶ 69-73.

On September 23, 2022, Defendants filed a Motion to Dismiss for Failure to State a Claim. (Dkt. No. 15). On July 28, 2023, the Court issued a Memorandum Opinion & Order granting Defendants' motion in part and denying it in part. (Dkt. No. 27) ("Order").

The Court granted Defendants' Motion to Dismiss as to Plaintiff's FTCA claims, Title VII claims, and the *Bivens* claim brought against Bolster in his official capacity. Order at 4-5. The Court

2

denied the Motion to Dismiss as to Plaintiff's *Bivens* claim against Defendant Wester. *Id*. at 11. The Court found that Tso had alleged "sufficient facts to plausibly suggest that Wester—as an electrical supervisor—knew of the excessive danger of inmates working on live electrical wires at an elevated height, which carries with it the risk of electrocution and the serious medical complications that may arise following electrocution." *Id*. at 9 (footnote omitted). Further, the Court held that "Tso's claim d[id] not arise in a new context, and a *Bivens* remedy [was] therefore available to Tso." *Id*. at 7. Accordingly, Wester is the only remaining defendant in the case other than the unnamed John Does.[1]

On August 25, 2023, Wester filed a motion for reconsideration of the July 28, 2023 Order. (Dkt. No. 30) ("Mot. to Reconsider"). On September 8, 2023, Plaintiff filed an Opposition to the motion for reconsideration. (Dkt. No. 33). On September 14, 2023, Defendant filed a reply in support of his motion for reconsideration (Dkt. No. 34).

### III.  LEGAL STANDARD

The denial of a motion to dismiss is an interlocutory order. *See Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013); *Orbcomm Inc. v. Calamp Corp*., 215 F. Supp. 3d 499, 503 (E.D. Va. 2016). "The proper vehicle for requesting reconsideration of an interlocutory order is Federal Rule of Civil Procedure 54(b)." *Orbcomm*, 215 F. Supp. at 503 (quoting *Fayetteville Inv'rs v. Commercial Builders, Inc*., 936 F.2d 1462, 1470 (4th Cir. 1991)). Unlike a motion for reconsideration under Rules 59(e) and 60(b), a motion for reconsideration under Rule 54(b) is "not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc*., 326 F.3d 505, 514 (4th Cir. 2003). This is because "a district court retains the

---

[1] In his Motion for Reconsideration, Wester notes that Plaintiff's *Bivens* claim against the "Doe Defendants" concerning their alleged denial of Tso's proper medical care for his injuries can survive the motion to dismiss stage to allow Tso to engage in narrowly tailored discovery to uncover the identities of those defendants. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[T]he plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.").

power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Id*. at 514-15.

Nonetheless, courts in the Fourth Circuit look to the same factors that govern motions to reconsider under Rules 59(e) and 60(b) when analyzing a motion to reconsider under Rule 54(b). *See Orbcomm*, 215 F. Supp. at 503; *Evans v. Trinity Indus., Inc*. 148 F. Supp. 3d 542, 544 (E.D. Va. 2015); *McAfee v. Boczar*, 2012 WL 2505263, at *2 (E.D. Va. June 28, 2012). Under this framework, courts may reconsider a prior interlocutory order when: "(1) a subsequent trial produces substantially different evidence; (2) controlling authority has since made a contrary decision of law applicable; or (3) the prior decision was clearly erroneous and would work manifest injustice." *Evans*, 148 F. Supp. 3d at 544 (quoting *Am. Canoe Ass'n*, 326 F.3d at 515).

## IV. ANALYSIS

Wester argues that the Court should reconsider its July 28, 2023 Order in light of intervening Fourth Circuit law: *Tate v. Harmon*, 54 F.4th 839 (4th Cir. 2022); *Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023); and *Mays v. Smith*, 70 F.4th 198 (4th Cir. 2023), all of which were decided after the motion to dismiss had been fully briefed by the parties. Wester asserts that *Tate*, *Bulger*, and *Mays* "underscore the importance of distinguishing claims like Plaintiff's, on the basis of the *type* of constitutional claim raised." Mot. to Reconsider at 2 (emphasis added). Specifically, Wester argues that the circumstances alleged in the Complaint present a new context deviating from *Carlson v. Green*, 446 U.S. 14 (1980), the sole Supreme Court case that has recognized an Eighth Amendment claim for money damages against prison officials.

In *Bivens*, the Supreme Court recognized an implied right of action where a plaintiff sought damages after federal officers conducted a warrantless search of his home, arrested him for alleged narcotics violations, and later subjected him to a visual strip search. *Bivens v. Six Unknown Named*

4

*Agents*, 403 U.S. 388, 389 (1971). The Supreme Court has recognized two other limited circumstances permitting implied causes of action: (1) gender discrimination in violation of the equal protection component of the Fifth Amendment Due Process Clause (*Davis v. Passman*, 442 U.S. 228 (1979)); and (2) failure to provide adequate medical treatment in prison to an inmate leading to his death in violation of the Eighth Amendment (*Carlson v. Green*, 446 U.S. 14 (1980)).

In the forty-four years following *Carlson*, the Supreme Court has "'consistently rebuffed' every request—12 of them now—to find implied causes of action against federal officials for money damages under the Constitution." *Tate v. Harmon*, 54 F.4th 839, 843 (4th Cir. 2022) (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743). And in the past six years in particular, the Supreme Court has "handed down a trilogy of opinions not only expressing regret over its *Bivens* cases, but also demonstrating hostility to any expansion of them." *Mays v. Smith*, 70 F.4th 198, 202 (4th Cir. 2023) (quoting *Hernandez*, 140 S. Ct. at 743). The Supreme Court has made clear that "expanding the *Bivens* remedy to a new context is an extraordinary act, that will be unavailable in most every case." *Id*. (cleaned up).

The Supreme Court has elected "to severely limit the reach of *Bivens* by imposing a highly restrictive two-step analysis for *Bivens* cases." *Bulger v. Hurwitz*, 62 F.4th 127, 136-37 (4th Cir. 2023) (quoting *Hernandez*, 140 S. Ct. at 743). First, a court must determine whether the case before it "falls within the causes of action authorized under the Supreme Court's three *Bivens* cases—*Bivens*, *Davis*, and *Carlson*—or whether it arises in a new context or involves a new category of defendants." *Bulger*, 62 F.4th at 137 (cleaned up). "If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1849 (2017). If so, the Court must "proceed to the second step and ask whether there are any special factors that counsel hesitation about granting the extension of *Bivens*." *Bulger*, 62 F.4th at 137 (quoting

*Hernandez*, 140 S. Ct. at 743).

The "special factors"[2] inquiry "must focus on 'separation-of-power principles' and 'requires courts to ask whether judicial intrusion into a given field is appropriate.'" *Mays*, 70 F.4th at 202 (quoting *Hernandez*, 140 S. Ct. at 743). If "there is *any* reason to think that Congress might be better equipped to create a damages remedy, then the court must decline to extend *Bivens* to a new context." *Id*. at 202-03 (internal quotation marks omitted) (emphasis added). The Fourth Circuit has therefore emphasized that courts are "clearly warned to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson*." *Tate*, 54 F.4th at 845.

The Fourth Circuit cases relied upon by the government exemplify this restrictive application. In *Tate v. Harmon*, 54 F.4th 839 (4th Cir. 2022), a federal prisoner brought a *Bivens* action against BOP employees and officials alleging conditions of confinement "so degrading and detrimental that they amounted to cruel and unusual punishment" under the Eighth Amendment. *Tate*, 54 F.4th at 842. The Fourth Circuit rejected the plaintiff's claim, explaining that "a new context may arise if *even one* distinguishing fact has the potential to implicate separation-of-powers considerations." *Id*. at 846 (emphasis added). Accordingly, the appellate court held that Tate's claim, although "an Eighth Amendment claim, … nonetheless arose in a context different" than in *Carlson* because it presented "a systemic claim based on a collection of prison conditions that could vary from cell to cell, prison to prison, and from time to time, implicating a broad class of inmates suffering ill-defined injuries with ill-defined damages." *Id*. at 846-47. And it further held that special factors counseled against

---

[2] Although the Supreme Court has not provided an exhaustive list of what constitutes a "special factor," the Fourth Circuit has previously enumerated several factors that the Supreme Court has noted would counsel hesitation for any extension of *Bivens*. These include "(1) uncertainty alone as to whether allowing a *Bivens* claim would have systemwide consequences; (2) a new category of defendants; (3) a difference as small as the rank of the officers involved; (4) the statutory or other legal mandate under which the officer was operating; (5) a potential effect on foreign relations, and national security; (6) Congress repeatedly declining to authorize the award of damages in the relevant context; and (7) the risk that the burden and demand of litigation would prevent Executive Officials from devoting the time and effort required for the proper discharge of their duties." *Bulger*, 62 F.4th at 140 (cleaned up).

extending a *Bivens* remedy to Tate's new context because political branches were "indeed 'better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.'" *Id*. at 848 (quoting *Egbert v. Boule*, 142 S. Ct. 1793, 1804).

Similarly, in *Bulger v. Hurwitz*, 62 F.4th 127 (4th Cir. 2023), the Fourth Circuit rejected extending a *Bivens* claim to an inmate who died as a result of prisoner-on-prisoner violence. The decedent's estate alleged that BOP had violated Bulger's Eighth Amendment rights by failing to protect him from being beaten to death by fellow inmates after improperly failing to stop his transfer to a violent, understaffed facility. *Id*. The Fourth Circuit reiterated its admonition against interpreting *Carlson* too broadly and held that "the Supreme Court has made clear that courts should not interpret *Carlson* to apply outside the precise context at issue in that case, noting that *even claims challenging the adequacy of medical care* may involve the same 'right' and . . . mechanism of injury' as in *Carlson* but still present 'different' contexts." *Id*. at 138 (emphasis added) (quoting *Abbasi*, 137 S. Ct. at 138).

The Fourth Circuit held that Bulger's claims "exceed[ed] the bounds of liability the Court's previous *Bivens* actions established" because they were "premised not on a failure to provide adequate medical care but on BOP officials' failure to . . . protect [him] from prisoner-on-prisoner violence." *Id*. Such claims were "materially distinct from a failure to provide adequate medical care claim like the one presented in *Carlson*." *Id*.

The Fourth Circuit rejected yet another *Bivens* claim in *Mays v. Smith*, 70 F.4th 198 (4th Cir. 2023), where a federal inmate brought claims under the Fifth Amendment for money damages against federal prison officials for alleged violations of procedural due process and equal protection. Although Mays alleged claims under the Fifth Amendment like in *Davis*, the Fourth Circuit held that procedural due process and raced-based discrimination claims presented a new context as compared

7

to the sex-discrimination claim recognized in *Davis*. *Id*. at 203. Again, the Fourth Circuit held that special factors counseled hesitation against expanding *Bivens* to Mays' circumstances. *Id*.

The Court finds that in light of *Tate*, *Bulger*, and *Mays*, Tso's case must be dismissed. Although Tso presents a claim under the Eighth Amendment, the claim does not allege the same right or the same mechanism of injury as in *Carlson*. The right at issue in *Carlson* was the failure to provide the inmate with proper medical attention. *Carlson*, 446 U.S. at 14. Tso alleges, however, that Wester violated his right to safe working conditions pursuant to 29 C.F.R. § 1960, which constituted "deliberate indifference to the health and well-being of Tso." Compl. ¶ 54. Tso's case also presents a different mechanism of injury. In *Carlson*, the plaintiff inmate died after prison officials failed to provide him with "competent medical attention" while he suffered an asthma attack. *Id*. at 16 n.1. Tso was allegedly injured, however, due to Wester's failure to provide him with the necessary equipment to safely conduct "highly dangerous work" with "no supervision whatsoever." Compl. ¶ 23. Tso's claim against Wester does not allege he failed to receive competent medical attention in accordance with his Eighth Amendment rights and accordingly presents a new *Bivens* context. *See Bulger*, 62 F.4th at 138 (noting that "even if Appellant could make out a claim for an alleged failure to provide constitutionally adequate medical treatment, a lack of competent medical care did not cause Bulger's death. Given this meaningful difference, we conclude that Appellant's . . . claims are not authorized by *Carlson* but instead present a new context."). For this reason, the Court must proceed to step two of the inquiry and consider whether any special factors counsel against granting an extension of *Bivens*.

Two special factors counsel against creating a new *Bivens* remedy in this case. First, Tso's *Bivens* claim against Wester would "require scrutiny of . . . a new category of defendants," namely federal prison work supervisors. *Bulger*, 62 F.4th at 140 (citation omitted). Second, like all federal

inmates, Tso has "full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program." *Earle v. Shreves*, 990 F.3d 774, 780 (4th Cir. 2021) (quoting *Corr. Servs. Corp v. Malesko*, 122 S. Ct. 515, 523). Although these "alternate remedies do not permit an award of money damages, they nonetheless offer the possibility of meaningful relief" and "therefore remain relevant" to the Court's analysis. *Id*. The Court will therefore decline to extend *Bivens* to this new context in light of these special factors.

**V.     CONCLUSION**

Because recent controlling authority from the Fourth Circuit is contrary to the Court's previous decision, the Court will revise its interlocutory order under Rule 54(b). Accordingly, it is hereby

**ORDERED** that Defendant Wester's Motion for Reconsideration (Dkt. No. 30) is **GRANTED**; and it is further

**ORDERED** that Count I is **DISMISSED** as to Defendant Wester.

It is **SO ORDERED**.

/s/
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
February 6, 2024